H. H. WALDEN *v.* STATE COMPENSATION COMMISSIONER *et al*

(No. 7352)

Submitted September 7, 1932.   Decided September 27, 1932.

*W. W. Wertz* and *S. H. Ballard,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LITZ, JUDGE:

This is an appeal from a final order of the State Compensation Commissioner refusing to award claimant, H. H. Walden, further compensation and closing his claim.

Walden has been paid compensation for 77-1/7 weeks, but asserts that he is permanently and totally disabled. February 12, 1929, while employed by Barium Reduction Corporation, South Charleston, he inhaled hydrogen-sulphide gas, which rendered him unconscious, and, as he contends, caused him to fall and strike his head against a concrete curb, thereby inflicting a permanent injury to his brain. Immediately after the accident he was assisted by fellow-workmen to a first aid laboratory maintained by the employer, and after being revived by temporary treatment, complained of a severe headache. Walden was treated later in the day by Dr. R. H. Dunn of South Charleston, who diagnosed his case at that time as acute pulmonary congestion, but in a subsequent report of February 18, 1929, described the injury as a concussion of the brain resulting from a fall. He was admitted to St. Francis Hospital February 25, 1929, for treatment, and remained there under the care of Dr. L. L. Aultz until April 12, 1929. May 8, 1929, Dr. F. P. Weltner of Charleston, reported to the commissioner that claimant's disability was due to the alleged fall. On June 11, 1929, Dr. R. B. Easley, of Charleston, advised the commissioner that Walden then presented a "typical post-traumatic syndrone of headache, vertigo, tinnitus and general weakness." Claimant returned to work April 22, 1929, but his condition failing to improve, he was placed in the Mountain State Hospital June 10, 1929, where he submitted to a subarachnoid injection of air, which temporarily improved his health. He was again admitted to St. Francis Hospital on August 29, 1929, and discharged therefrom September 1, 1929. Thereafter he was sent to Huntington State Hospital and treated by Dr. L. V. Guthrie, who classed his condition as traumatic psychosis, and expressed the opinion that the "accident * * * acted as a contributing factor in his mental condition." On March 4, 1930, Dr. Easley reported to the compensation department, as follows: "Mr. Walden was examined on June 7, 1929, at which time a diagnosis of post-traumatic head syndrone was made. He was admitted to the Mountain State Hospital on June 10, 1929, and given a subarachnoid injection of air. For some time following this there was a marked improve-

ment which continued until his return to work. Upon working, however, he had a relapse to his former condition and in addition several attacks of amnesia. Objectively there is no change noted, and only slight residuals of his injury of February 12, 1929. Mr. Walden has been resting for the past few weeks and has shown considerable improvement during this time. I would like to suggest that he not return to work for an additional three months.''

By letter dated May 22, 1930, Dr. Aultz advised the compensation commissioner: ''When Mr. Walden left the hospital he was not well, but was thought able to go home. At this time he was very nervous, had severe headaches and numbness of the left side of the head, arm and leg. Since he left the St. Francis Hospital he has been treated by Dr. Easley and also by the Huntington State Hospital, but he is not much improved. He is nervous, weak and emaciated, losing flesh and not able to do any work, although I personally know him to be a hard and willing worker. I am positive that Mr. Walden is not malingering. He has not been well since he had his first trouble.'' In a written report, dated August 13, 1930, directed to the commisioner, Dr. I. I. Hirschman of the Kessler-Hatfield Hospital, Huntington, stated that ''in view of the history of an injury to his head I am inclined to believe he is suffering from traumatic psychosis, * * * and because of his mental condition he is incapacited from earning a livelihood at this time.'' Claimant was confined in Spencer State Hospital from September 8, 1930, to December 9, 1930. Dr. D. D. Chapman, superintendent of the institution, diagnosed his case from the hospital records as a left unilateral sclerosis attributive to a trauma or blood clot.

By letter dated January 5, 1931, the Barium Reduction Corporation requested that claimant be denied further compensation for the sole reason that he did not in fact fall and strike his head when overcome by the gas, and asked that a hearing be granted in order that it might introduce evidence in support of its contention.

At a hearing of the case on April 13, 1931, the following evidence was introduced by the employer: Joe Beckenstein, department superintendent for the company, testified that

on the date of the alleged injury he, Walden and E. M. Yeager were in a building thawing a pipe containing hydrogen sulphide gas; that shortly after the plug was removed from the end of the pipe it began to thaw, compelling them to leave the room in which they were working; that he was not seriously affected by the gas; that when he got outside the building, upon seeing Walden, who was only a few feet in advance, slumping toward the ground he caught him under the shoulders and "eased" him down, thus preventing him from falling. E. M. Yeager testified that he was not affected by the gas; and that upon emerging from the building, he saw Beckenstein supporting claimant, whom they assisted to a nearby first aid laboratory maintained by the company. Dr. R. H. Dunn testified in chief that the X-ray pictures made by him of claimant's head showed no fracture of the skull; and that he had been mistaken when he described claimant's injury as a concussion of the brain. He admitted on cross-examination that psychosis could be caused by an injury to the head which would not be disclosed by X-ray pictures. Randolph Specht, chemist for the company, testified that after he had revived claimant with a stimulant he complained of a headache. F. M. Yeager, when recalled for furthere cross-examination, testified that while claimant was being suported by Beckenstein, he broke loose and ran and fell head-first into a pool of water containing pieces of pipe and blocks of concrete.

Claimant introduced the following evidence: Walden, testifying in behalf of himself, stated that he does not remember what occurred after he was overcome by the gas; that when he regained consciousness he was in the St. Francis Hospital; that Beckenstein, Everrett and French Turley, and Edgar Mason "said that I fell and struck my head and some of them said I had a knot on it as big as a hen egg;" that his health was good prior to the injury, but since then he has been unable to work; and that when he has pains in his head he is unable to remember what happens. Edgar Mason testified that he was present when claimant was injured and saw him fall; that when Beckenstein attempted to help him, claimant "broke and run and fell into a puddle of water." Alfred Bonham testified that claimant had been in his employment

several years prior to his injury, but had never complained of pains in the head, and had always been a willing worker.

Everett and French Turley, called by the employer on rebuttal, testified that they saw claimant after he was gased, and before he was taken to the laboratory; that they did not see him fall on the concrete curb or in a pool of water; and that they did not notice whether claimant had a bump on his head, nor did they othewise inform him. It does not appear from their testimony or other source that Walden could not have fallen before their arrival. Beckenstein was not re-called.

Claimant was in good health prior to his injury, and since that time has apparently suffered from continuous disability. "Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumption should be resolved in favor of the employee rather than against him." *Pripich* v. *State Compensation Commissioner et al.,* decided this term. This is a stronger case in favor of claimant in that there is no medical evidence that his disability is due to any cause other than the injury. "Evidence should be construed liberally in favor of a claim-ant for workmen's compensation." *Fulk* v. *State Compensation Commissioner,* 112 W. Va. 555, 166 S. E. 5.

The ruling complained of is reversed, and the case remanded for further consideration.

*Reversed and remanded.*